## Real Silk Hosiery Mills, Inc., v. Moran et al.

*Foreign corporations — Registration—Doing business in Pennsylvania—Act of April 22, 1915.*

A foreign corporation which maintains an office in Pennsylvania under a division superintendent, under whom are district and local managers, at which office its plans for selling its product are made and collections from salesmen received, is not relieved from the duty of registration under the Act of April 22, 1915, P. L. 170, by the fact that its custom was to ship its goods from outside the State direct to the consumer within the State.

Application for a preliminary injunction. C. P. No. 5, Phila. Co., June T., 1924, No. 4355, in Equity.

*Wolf, Patterson, Block & Schorr,* for plaintiff.

*R. T. McCracken,* for defendants.

SMITH, J., July 9, 1924.—This was a hearing upon an application for a preliminary injunction. The bill of complaint avers, *inter alia,* that the Real Silk Hosiery Mills, Incorporated, was organized under the laws of the State of Illinois, and that its business consists of the manufacture and sale of hosiery direct to the consumer.

There has been no answer filed by the defendant, but counsel for the defendant at the bar of the court raised the question that since the evidence disclosed the fact that the plaintiff was not registed to do business in Pennsylvania, it could not maintain its action against the defendant.

This raises the point: Was the plaintiff doing business in the State of Pennsylvania? The plaintiff manufactured its hosiery in the State of Illinois, and it also appears that, although the plaintiff shipped to the office of its

4 D. & C.

district manager in Philadelphia a small amount of hosiery for replacements, it shipped its hosiery to the consumers upon sales made from salesmen's samples. There is further evidence that the plaintiff maintained an office in the Widener Building, in the City of Philadelphia; that they employed a district manager in this territory, with headquarters in Philadelphia; that this district manager employed and trained local managers within his district, salesmen and clerks who worked in the main office.

The district manager had the name of the plaintiff on the door of the company's office in Philadelphia, the lease of which was taken in the name of the Real Silk Realty Company, a subsidiary company of the plaintiff. The rent was paid by the district manager out of his commissions. The plaintiff supplied all stationery, literature, cards, blanks, records and other supplies to the manager, although the plaintiff retained legal title thereto. The plaintiff further had a motion-picture machine in this territory for advertising purposes, which was leased to the district manager. The filing cabinets in the Philadelphia office were held on memoranda and loaned to the managers. At the time of the dismissal of the defendants, who were the district managers in Philadelphia, they were ordered out of the office of the company in the Widener Building by an authorized agent of the plaintiff. One of the duties of the district manager was to "preserve, protect and enforce the property and property rights" of the plaintiff, to transmit all moneys belonging to the plaintiff. The district manager, in pursuance of his agreement, did collect from the representatives or salesmen of the plaintiff all moneys collected by them, which moneys were sent to the home office of the plaintiff in the State of Illinois. The plaintiff avers in its bill that "in the week ending June 7, 1924, over 900 boxes of hosiery were sold from the Philadelphia office, which was in charge of the defendants, aggregating over $5000 in amount, which was the average amount of business done in this territory."

In Pavilion Co. *v.* Hamilton, 15 Pa. Superior Ct. 389, Judge Porter, repeating the language of many prior cases, said: "The tests of the application of the Act of 1874, as shown by previous adjudications in Pennsylvania, are whether the foreign corporations shall have an agent in the State of Pennsylvania; or shall have offices for the general conduct of its business in the State; or shall conduct its corporate business within the State; or shall have a part of its capital invested in the State."

The plaintiff, as has been before stated, employed a division superintendent, a district manager, several local managers, with all of whom it had signed contracts. It maintained an office within this State; it controlled its lease, and by its agent there situate carried out its plans of selling, made the collections from its salesmen, turned the funds over to the district manager in Philadelphia, who, in turn, transmitted them to the home office in Illinois. It had its name on the office door, on the printed stationery and order blanks in this office, which were distributed from the office to the local managers, and it owned and used in this State a limited amount of personal property for the purpose of doing its business in this State.

The Act of April 22, 1915, § 1, P. L. 170, also the Act of June 8, 1911, P. L. 710, would prevent a foreign corporation doing business in this Commonwealth and not here registered from bringing suit against this defendant. The 4th section of the Act of April 22, 1915, P. L. 170, provides that no action shall be instituted by such foreign corporations in any of the courts of this Commonwealth until such corporation complies with the provisions of this act. As was said in the case of Com. *v.* Nolde, 44 Pa. Superior Ct. 111, by Orlady, J. (page 113): "They placed a representative in the office, who

employed sub-agents and distributed circulars and advertisements by mail, which gave the general character, scope and system of the business they were transacting. This is not a case of an isolated transaction, but the general business of the company was openly and continuously conducted for a number of months."

In Diamond P. Specialty Co. *v.* Milne, 67 Pa. Superior Ct. 223, Porter, J. (page 226), said: "The evidence disclosed that the plaintiff was a foreign corporation, and that it had not complied with the provisions of the statutes above mentioned. The evidence would have warranted a finding that the plaintiff had established an office in the City of Philadelphia and there transacted business; that it employed an agent who was in charge of said office, who employed sub-agents to assist in the business; that business was transacted at said office, and that the place was known as the Philadelphia office of the plaintiff corporation. Under this evidence, the court ought to have submitted the question whether the plaintiff was doing business in the State of Pennsylvania to the jury, with proper instructions as to what constituted doing business, the evidence as to the facts being conflicting:" Marwick et al. *v.* Rio Grande & Eagle Pass Ry. Co., 25 Dist. R. 246.

In Com. *v.* Wilkes-Barre & H. R. R. Co., 251 Pa. 6, Mr. Justice Mestrezat said (page 10): "The question of whether or not the company is doing business within the State is one of fact not necessarily depending solely upon single acts or on the effect of single acts, but on the effect of all the combined acts which it may perform here. It does not appear the acts which were done in this State were a mere incident of the defendant's corporate existence, but were the performance of the function and business of the corporation itself."

It would be the height of sophistry to contend that just because the one incident or detail in the transaction, to wit, the shipping of the hosiery from outside the State direct to the consumer within the State might not be doing business, we must ignore or fail to take into consideration all of the essential links in the chain of a very successful and active business preparatory to the final shipment.

The plaintiff, having failed to properly conform to the laws of this Commonwealth, has no standing before this court in the case at issue.

Injunction refused.